## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEIF HINTERBERGER, 49-50, LLC,<br>CARREAU DESIGN CORPORATION,<br>49TH STREET SHOPS LLC,<br>UPTOWN RETAIL LLC, and<br>UPTOWN BUSINESS CENTER, LLC,<br><br>          Plaintiffs,<br><br>v.<br><br>CITY OF INDIANAPOLIS, CHARLES<br>CAGANN, AND MANSUR REAL ESTATE<br>SERVICES, INC.<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 16-CV-1341 SEB-MJD |

## RESPONSE AND OPPOSITION TO RULE TO SHOW CAUSE

Mary Jane Lapointe
Daniel L. Kent
LAPOINTE LAW FIRM, P.C.
8465 Keystone Crossing, Suite 150
Indianapolis, Indiana 46240

Michael Rachlis
Kevin B. Duff
Nicole Mirjanich
RACHLIS DUFF PEEL
 & KAPLAN, LLC
542 South Dearborn, Suite 900
Chicago, Illinois 60605

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

APPLICABLE STANDARD ............................................................................................... 3

I.     The Attorneys Made Good Faith Efforts To Comply With Fed. R. Civ. P. 56 And Local Rule 56-1 In Presenting The Material Facts In Dispute And Supporting Record .......... 4

     A.     Questions Regarding the Factual Record ........................................................ 5

         1.    *The Hinterberger Affidavit* ............................................................... 5

         2.    *Statement of Facts Regarding Detrimental Reliance* .......................... 8

         3.    *Statement of Facts Regarding Hinterberger's Reputation* ................... 9

         4.    *Testimony of Thies and Related Issues* ............................................ 11

         5.    *Walton Testimony and Related Exhibits* .......................................... 12

         6.    *The Condition That Hinterberger Not Speak Negatively* .................... 14

         7.    *Redactions* .................................................................................. 16

     B.     Questions About Narrative Statement of Facts ............................................ 16

II.    Even if a Violation of Local Rule 56-1 Is Found, No Sanction Is Warranted ............... 18

CONCLUSION ............................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page**

*Adams v. USAA Cas. Ins.*,
 863 F.3d 1069 (8th Cir. 2017) ................................................................3, 4

*Ammons v. Aramark Uniform Services, Inc.*,
 368 F.3d 809 (7th Cir. 2004) ..................................................................18

*Bank of Illinois v. Allied Signal Safety Restraint Systems*,
 75 F.3d 1162 (7th Cir. 1996) ..................................................................7-8

*Bordelon v. Chicago School Reform Bd. of Trustees*,
 233 F.3d 524 (7th Cir. 2000) ..................................................................18

*Cady v. Sheahan*,
 467 F.3d 1057 (7th Cir. 2006) ..............................................................19-20

*Cichon v. Exelon Generation Co., LLC*,
 401 F.3d 803 (7th Cir. 2005) ..................................................................18

*Cook v. O'Neill*,
 803 F.3d 296 (7th Cir. 2015) ..................................................................5-7

*Cooter & Gell v. Hartmarx Corp.*,
 496 U.S. 384 (1990) ..................................................................................3

*De v. City of Chicago*,
 912 F. Supp. 2d 709 (N.D. Ill. 2012) ......................................................19

*Georgopoulos v. International Brotherhood of Teamsters AFL-CIO*,
 942 F. Supp. 883 (S.D.N.Y. 1996) ...........................................................4

*Greer v. Board of Educ. Of City of Chicago, Ill.*,
 267 F.3d 723 (7th Cir. 2001) ..................................................................18

*Hartmarx Corp. v. Abboud*,
 326 F.3d 862 (7th Cir. 2003) ....................................................................3

*Hunter v. Earthgrains Co. Bakery*,
 281 F.3d 144 (4th Cir. 2002) ....................................................................3

*Mars Steel Corp. v. Continental Bank*,
 880 F.2d 928 (7th Cir. 1988) ....................................................................3

**Cases**                                                                                     **Page**

*McCann v. Iroquois Mem'l Hosp.,*
    622 F.3d 745 (7th Cir. 2010) ........................................................................ 7

*Modrowski v. Pigatto,*
    712 F.3d 1166 (7th Cir. 2013) ..............................................................17-18

*Monell v. Dep't of Soc. Srvs.,*
    436 U.S. 658 (1978) ............................................................................. 12, 17

*In re Pennie & Edmonds LLP,*
    323 F.3d 86 (2d Cir. 2003) ........................................................................ 3

*Pike v. Caldera,*
    188 F.R.D. 519 (S.D. Ind. 1999)..............................................................16

*Russell v. Acme-Evans Co.,*
    51 F.3d 64 (7th Cir. 1995) ........................................................................ 8

*Smith v. Lantz,*
    321 F.3d 680 (7th Cir. 2003) ..............................................................17-18

*Tucker v. Williams,*
    682 F.3d 654 (7th Cir. 2012)...................................................................... 3

*United Nat. Ins. Co. v. R&D Latex Corp.,*
    242 F.3d 1102 (9th Cir. 2001) .................................................................. 3

*U.S. v. Funds in the Amount of $271,080,*
    816 F.3d 903, 907 (7th Cir. 2016).............................................................. 7

*Waldridge v. American Hoechst Corp.,*
    24 F.3d 918 (7th Cir. 1994) ....................................................................17

**Statutes/Rules**                                                                                       **Page**

Fed. R. Civ. Pro. 11 ................................................................................................... 1-2, 3-4

Fed. R. Civ. Pro. 56 ........................................................................................................ 4

INSD Local Rule 5-11 ...................................................................................................16

INSD Local Rule 5-11(c)(2) .........................................................................................16

INSD Local Rule 56 ...................................................................................................2, 4

INSD Local Rule 56-1 ....................................................................................4, 16-17, 18

Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. Pro. 11 ...................... 3

Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. Pro. 11(c) ............ 18

Advisory Committee Comments to INSD Local Rule 56-1 ................................................ 17

**Other Authorities**

Merriam-Webster Online Dictionary,
     http://www.merriam-webster.com (April 13, 2019) .......................................... 14

## RESPONSE AND OPPOSITION TO RULE TO SHOW CAUSE

The five attorneys involved in preparing Hinterberger's brief in opposition to the City's motion for summary judgment (hereinafter "Opposition" or "Opp.") respectfully submit this response to the Court's *sua sponte* order to show cause why they should not be sanctioned for the conduct described under the "Standard of Decision" in the Court's Order of March 30, 2019 (the "Order").

## PRELIMINARY STATEMENT

In the Order, the Court expresses great frustration and concern with regard to the content of the Opposition.  Each attorney involved in the preparation of the Opposition is deeply invested in their profession and the court system and cannot adequately express how disturbed they feel about the Court's reaction to the submission.

None of these attorneys has ever had any such issue arise previously, covering work on behalf of collectively thousands of clients and matters over dozens of years of practice. None of the attorneys involved have ever had any sanction under Rule 11 imposed upon them.  Each attorney has a history of due care, integrity, service, and respect for the Court and its rules and procedures, and every effort was made to apply that professionalism and care here.

There was no improper purpose or bad faith in filing the summary judgment opposition.  The attorneys involved here are unequivocally apologetic for the challenges that were created through the submission and for any errors made.  The attorneys further request that no sanctions be imposed for the following additional reasons:

*First,* Rule 11 sanctions are imposed sparingly, with *sua sponte* sanctions reserved for egregious circumstances exhibiting extraordinary bad faith.  The attorneys submit that this

high standard did not arise here.  The attorneys and staff spent hundreds of hours to present "the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment" in an orderly and accurate manner – including locating and identifying the support for the citations in opposition to the Defendant's motion for summary judgment as required by Local Rule 56.  The attorneys recognize and acknowledge the Court feels they were not successful in their attempts to meet the requirements of the rule but they put in substantial effort in an attempt to respond appropriately to the City's motion and provide the Court with a comprehensive record to show there were material facts in dispute that precluded summary judgment.

*Second,* the attorneys attest that they did not engage in bad faith or an improper purpose by submitting the Plaintiffs' opposition to the City's motion.  There was no intent to mislead, mischaracterize, or obscure any aspect of the record.  Recognizing that the record is large, complex, and covers a lengthy time frame, the attorneys' goal was to provide a complete and accurate record for the Court, and the attorneys conducted themselves to that end.  They regret the Court's concern that they failed in that goal.

*Third,* if the Court determines that Plaintiffs' submission violates the rules of procedure, the attorneys respectfully submit that a sanction is unnecessary and unwarranted.  This is an isolated incident.  The attorneys have not exhibited any pattern of conduct warranting a sanction.  The Court's criticisms, admonishment, and striking of the facts submitted by Plaintiffs are already an incredibly severe message and lesson for the entire team of attorneys.

## APPLICABLE STANDARD

Rule 11's main purpose "is to deter baseless filings…." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  "A district court must also bear in mind that such sanctions are to be imposed sparingly, as they can have significant impact beyond the merits of the individual case and can affect the reputation and creativity of counsel."  *Hartmarx Corp. v. Abboud,* 326 F.3d 862, 867 (7th Cir. 2003) (reversing district court award of sanctions).

*Sua sponte* orders to show cause why sanctions should not be imposed are ordinarily limited to situations "akin to a contempt of court." *See* Advisory Committee Notes to 1993 Amendments to Rule 11.  A finding of bad faith or a willful abuse of the judicial process is a prerequisite to imposing sanctions pursuant to the court's inherent power, and courts must "exercise restraint and caution in exercising" this power.  *Tucker v. Williams,* 682 F.3d 654, 661-62 (7th Cir. 2012) (reversing an award of sanctions where there was no evidence of bad faith or intent to obstruct the judicial process and at worst "amounted to clumsy lawyering"); *see also Mars Steel Corp. v. Continental Bank,* 880 F.2d 928, 937-39 (7th Cir. 1988) (affirming a district court's *sua sponte* sanctions award against an attorney who did no research before seeking an order to hold other parties in contempt for violating a non-existent court order and who also made the request solely for the purpose of delay).  Courts have generally strictly limited *sua sponte* sanctions, with such sanctions imposed with particular stringency. *See, e.g., Adams v. USAA Cas. Ins.*, 863 F.3d 1069, 1077 (8th Cir. 2017) (reversing *sua sponte* sanctions); *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003) (reversing Rule 11 sanction where court did not find subjective bad faith); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002); *United Nat. Ins. Co. v. R&D Latex Corp.,* 242 F.3d 1102, 1115-16 (9th Cir. 2001).

Filings that have inaccuracies or issues of carelessness do not necessarily support a Rule 11 sanction.  By way of example, in *Georgopoulos v. International Brotherhood of Teamsters AFL-CIO,* 942 F. Supp. 883, 905 (S.D.N.Y. 1996), a district court in similar circumstances – addressing briefing on summary judgment – did not impose sanctions upon the attorneys for the plaintiff even though the Court found that "the papers are inaccurate, poorly drafted, and an embarrassing example of shoddy lawyering." *Id.* at 905.  Similarly, in *Adams*, the appellate court reversed the sanctions imposed by the district court even though it was admitted that a large reason for the motion for voluntary dismissal was a search for a more favorable forum, an improper purpose.  *Adams,* 863 F.3d at 1080-84.

The attorneys submit that the brief at issue here, which the Court similarly has harshly criticized, does not meet the standard for bad faith, either subjectively or objectively, such that sanctions are warranted under Rule 11.

I.   **The Attorneys Made Good Faith Efforts To Comply With Fed. R. Civ. P. 56 And Local Rule 56-1 In Presenting The Material Facts In Dispute And Supporting Record**

While the attorneys recognize and acknowledge the Court's concerns, they did not submit Plaintiffs' Opposition brief in bad faith or for improper purposes, without research, or with intentional or reckless disregard for their duties as officers of the Court.  The attorneys submit that sanctions are unwarranted because they made good faith efforts to comply with the requirements of Fed. R. Civ. P. 56 and Local Rule 56-1, and that the problems with the brief described by the Court either have a reasonable and fair explanation or do not rise to the level where sanctions are appropriate or warranted.

From a subjective perspective, none of the attorneys had anything other than good faith and proper motive regarding the opposition brief. This is further evidenced by the

explanations set forth below.  The attorneys submit that not only does the record not reflect subjective bad faith or actions akin to contempt, but respectfully also submit that from an objective perspective, there is no intentional or reckless disregard of their duties to the Court.

### A.      Questions Regarding the Factual Record

Lead counsel and those working with him devoted significant time and effort to accurately and completely prepare, present, and cite the record in response to the City's summary judgment motion.  (Rachlis Declaration (Exhibit A submitted herewith), ¶¶ 3, 5-6) This was not easy or simple, not only because of the span of time covered by the conduct at issue, but also because of the nature of the issues raised by the City's motion.  Hinterberger and his attorneys worked to provide the Court with as complete a record as possible against which to make its decision in order to evaluate the City's 37-page memorandum and related exhibits.

The Court has identified several issues and concerns regarding the content and presentation made in the Opposition, which are addressed below.

#### 1.    The Hinterberger Affidavit

The Court's opinion describes the affidavit submitted by Hinterberger in support of his summary judgment as a sham.  (Order at 12-14)  The attorneys respectfully submit that the affidavit is not a sham.  The affidavit does not contradict Hinterberger's testimony, as the Court's discussion appears to suggest.  The affidavit was submitted to amplify and clarify the witness's testimony, which is a proper purpose for an affidavit submitted in response to a summary judgment motion under the governing law and facts.  *See Cook v. O'Neill,* 803 F.3d 296, 298 (7th Cir. 2015).  In *Cook*, the plaintiff had provided testimony that she had "let in"

officers to her home. *Id.* at 297. She later submitted an affidavit (in response to summary judgment) that explained what she meant by "let in." *Id.* The Court recognized that the further discussion of "let in" was an amplification of her testimony on that term, and that the affidavit was not a sham. *Id.* at 298-99.

Similarly, Hinterberger's affidavit was intended to amplify his testimony consistent with his understanding that the City forced him to accede to a project that he neither wanted nor requested. For instance, Hinterberger testified that the City promised to assist with zoning and shepherd Hinterberger through the zoning process. (Ex. 1 at 73:12-74:20; 80:2-6; 82:11-16; 83:7-19 (unless otherwise noted, all numbered exhibits referenced herein refer to the exhibits submitted by Plaintiffs in opposition to the City's motion for summary judgment)) The affidavit was offered to explain the importance of zoning in relation to the City's power and influence over and demands to Hinterberger. The attorneys believed it was a reasonable inference from his testimony that if Hinterberger did not acquiesce to the City's requirements and proceeded only with his own (rejected) plan, he would not have an unobstructed path to zoning and would receive no shepherding from the City. (Compare Ex. 4, ¶ 2) Similar to the explanation of "let in" in the *Cook* case, Hinterberger's affidavit was meant to amplify and explain what would happen regarding zoning and promises to shepherd and assist him with zoning if Hinterberger met (or did not meet) the City's demands.

This amplification was proper under the law and did not contradict Hinterberger's deposition testimony (or allegations in other submissions (*see, e.g.,* Complaint ¶ 34)), even though the Court ultimately found it was not persuasive and did not identify a disputed material fact. *See Cook,* 803 F.3d at 303 ("The sham doctrine must be applied with caution.

It's too easy otherwise for a district court to start making credibility determinations as part of the summary judgment process.") (Hamilton, J., concurring).

Moreover, several of the cases cited by the Court support the view that the affidavit here is not a sham, as they involved circumstances where the sham affidavit rule was vacated where a party offered a plausible explanation for any change in testimony. (Order at 14)   In *U.S. v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016), the Seventh Circuit vacated summary judgment and found that the two claimants' affidavits should not have been disregarded as sham affidavits because each claimant provided an explanation for the perceived change in testimony. *Id.* at 907-08.  One claimant provided a correct explanation for any inconsistencies in his prior answer relating to immigration forms he filled out, and the other claimant provided a plausible explanation for any perceived contradictions in his prior testimony relating to whether the claimant knew the location of certain funds at the time of his testimony.  *Id.*  In *McCann v. Iroquois Mem'l Hosp.,* 622 F.3d 745, 751 (7th Cir. 2010), the Seventh Circuit vacated summary judgment and held that the plaintiff employees' affidavits (which contradicted their earlier testimony regarding when a particular conversation occurred) should have been considered.  *Id.* at 749-51.  There, the employees first testified that a conversation occurred on one date, and in a subsequent affidavit stated the date of that conversation differed.  *Id.*  In allowing the affidavits, the court noted the change was immaterial, there was no contradiction with respect to the substance of the conversation, and there was a plausible explanation for the incorrect date.  *Id.*

Other cases cited in the Order regarding the sham affidavit doctrine are inapplicable because the Court there found the prior testimony was so unequivocal that there was no plausible explanation other than it being a sham.  *Bank of Illinois v. Allied Signal Safety*

7

*Restraint Systems,* 75 F.3d 1162, 1168-69 (7th Cir. 1996) is inapposite because in that case, the prior testimony was so unequivocal and answered without hesitation or confusion (*i.e.*, not wearing a seatbelt) that the affidavit saying the witness was wearing a seatbelt was plainly contradictory and there was no plausible explanation for the change in testimony. Likewise, *Russell v. Acme-Evans Co.,* 51 F.3d 64, 67 (7th Cir. 1995) is inapposite because there the affidavit was "designed, it appears, to retract or explain away concessions that he had made in his deposition." *Id.*

It seems equally relevant to note it does not appear sanctions were imposed (or a show cause order issued) even in those cases where the sham affidavit rule was applied.

The Court's criticism of Hinterberger's affidavit also addresses its timing. But it is not unusual for affidavits to be executed and submitted in connection with a summary judgment filing, even from individuals who have previously been deposed. By comparison, the City's motion for summary judgment included an affidavit from a City official, Jennifer Fults, who had been deposed in the matter several months earlier, that appears to have been executed on the same date that the City submitted its motion. (*See* Docket No. 133-2)

### 2. *Statement of Facts Regarding Detrimental Reliance*

The Court's opinion raises separate concerns about the section in the statement of facts titled, "There are disputed issues of fact created by the uncontested facts and statements of Hinterberger's performance and detrimental reliance." (Docket No. 142, Plaintiffs' Opp. at 2; *see* Order at 6-7) The Court questioned the dispute to which this section responds.

The City's summary judgment motion made both factual and legal arguments asserting that no contract existed between itself and Hinterberger, and to the extent an

8

agreement existed between the parties, express conditions were not met. (Docket No. 134, City Mem. at 5-6, 8, 15, 29-30, n. 11)

Hinterberger advanced this section of the statement of facts (and others) to dispute the assertions of the City that there was not a contract with the City relative to Hinterberger's activities for the Uptown development, and to respond to facts disputing the alleged conditions of the contract and whether those were met. The City's motion was silent as to the facts reflecting Plaintiffs' actions and his reliance in connection with the contract, which made it important to explain and document the performance that spanned nearly a decade. The attorneys also believe this part of the record was important to frame and provide context to the Court for Plaintiffs' claim, in opposition to the City's motion.

### 3. *Statement of Facts Regarding Hinterberger's Reputation*

The Court also addressed the statements set forth in Section H of Hinterberger's opposition, stating that it was unclear what, if any, dispute was being addressed. (Order at 7) The City's motion for summary judgment argued that no constitutional interests existed or were implicated by Hinterberger's complaint in any respect. (City Mem. at 12-19) The noted section was intended to set forth the facts relating to Hinterberger's constitutionally protected liberty interests, which is why acts and statements regarding Hinterberger's reputation were specifically identified in that section.

The Court's criticism focused both on the proffered citations not being sufficiently specific to support alleged facts, and also that every asserted fact was not supported with a citation including the footnote that the Court pulls into its quoted example. The Court raises separate concerns on three documents cited in this section relative to issues raised as Mr.

Hinterberger's reputation (Exs. 107-109), and determined that no reasonable jury could infer that Hinterberger's livelihood and reputation were being destroyed. (*See* Order at 7)

The attorneys believed that the facts set forth in those e-mails were appropriate and necessary to identify in a factual discussion regarding Hinterberger's reputation and livelihood. One fact is the undisputed statement from former Chief of Staff Ryan Vaughn to the new head of the Department of Metropolitan Development that he should ignore and delete Hinterberger's communication and not communicate further with him because he is the type of person who will come to your office with an AK-47. (Ex. 107, Bates No. 878) Exhibit 108 exhibited similar animus as the former Chief of Staff reported Hinterberger to Homeland Security officials and others. (Ex. 108, Bates No. 336-49) The attorneys recognize that it is not clear from the face of Exhibit 108 that the individuals to whom Vaughn sent the email were the Homeland Security director and Chief of Police. They recognize they should also have included the portion of Vaughn's testimony where he identifies the referenced position each of these individuals held at that time. Exhibit 109 involves other unflattering statements by Vaughn to a City Council person. (Ex. 109, Bates No. 366) Objectively, and without making a credibility determination on summary judgment, the attorneys believed that a reasonable person could determine that Hinterberger's reputation and ability to earn a living were being attacked at the highest and most powerful levels of City government, thereby implicating his protected liberty interests.

The Court further notes that the e-mails are of varying lengths. However, the statements that relate to Mr. Hinterberger's reputation were all on the first page of each exhibit; the remaining body of the e-mails was provided to avoid objections on completeness grounds. The attorneys acknowledge that the citations could and should have been clearer

10

and better presented.  Again, this was not done for any improper purpose or in violation of applicable rules.

### 4.    Testimony of Thies and Related Issues

The Court raises several issues regarding certain statements made by Hinterberger that his property and liberty interests were implicated.  (Opp. at 30-32 (Argument, Section III, "The City Injured Hinterberger's Property and Liberty Interests"))  The Court also raised concerns about testimony from Adam Thies, which did not specifically make reference to one of Thies' bosses, Deputy Mayor and Chief of Staff Ryan Vaughn (discussed *supra*). (Order at 10-11)

In hindsight, the citation to Thies testimony on page 10-11 of the Order (referring to Opp. at 32) does not cite to Vaughn expressly.  However, the testimony states that Thies was told by one of his other bosses (Deputy Mayor Deron Kintner), "Don't talk to him," referring to Hinterberger. (Ex. 88 at 176:20)  Hinterberger's attorneys did not repeat or further discuss the AK-47 statement that was described in the earlier statement of facts from Vaughn to Thies, nor to additional testimony in the record that Thies was told by his "bosses" that the work with Hinterberger at the Uptown was not going forward (Ex. 88 at 174:16 - 175:1; 306:1-2), which meant that DMD would not be working with Hinterberger.  These documents were to establish that Thies' hands at DMD were tied directly by his superiors as related to Hinterberger.  This was identified as further evidence regarding the impact on Hinterberger's livelihood and reputation.

The Court also makes reference to the citation of Exhibit 131, which is an audio recording of a phone conversation with a representative of a developer with whom Hinterberger was attempting to work with on the Uptown project. (Order at 11) The

representative expressed a desire to work with Hinterberger, but indicated that he would be following up with City to confirm its support.  The recording was presented in conjunction with other evidence, including Cagann's testimony (Opp. at 32; Ex. 15, Cagann at 238-240) to show that when developers came to the City for "reassurance" regarding the City's support for the project (as exemplified by the recording), such reassurances were not given.  All of this was presented to further document that the City made certain statements to Hinterberger but then acted differently and breached promises and commitments made to him.  The attorneys again believed the Court would find the cited evidence provided objective factual support for disputed material facts regarding Hinterberger's liberty interests.

### 5.   Walton Testimony and Related Exhibits

The Court discusses the references to Reggie's Walton's testimony and certain exhibits, raising its concern that there is a "tendency towards insinuation." (Order at 9)  The Plaintiffs' intent in including this testimony was to provide context for and evidence of the existence of policies and customs of improper favoritism related to how development projects were awarded and financed including through Walton's position, role, and conduct (as well as all inferences therefore) consistent with the U.S. Supreme Court decision in *Monell v. Dep't of Soc. Srvs.,* 436 U.S. 658 (1978).

As the Court observed, Walton was convicted for crimes committed through his position at the DMD.  While in the DMD, and performing the acts that led to his conviction and imprisonment, Walton had involvement with Plaintiffs' properties, including at critical times that coincided with times Hinterberger was attempting to secure financing to maintain control over his properties. (Ex. 133 at 59:5-60:19, 65:2-67:24)  Walton was deposed in this

matter in August 2017. (Docket No. 93)  That deposition was taken to obtain further evidence of the policies and practices at DMD, issues regarding purposeful delays taken within the DMD to hinder certain developers (including Plaintiffs) and favor others, Walton's specific conduct as to Plaintiffs, and his knowledge of the conduct of others in regards to Plaintiffs. Walton took the Fifth Amendment against self-incrimination when asked about each and all of these areas and topics.  As a result of the invocation of the Fifth Amendment privilege, an adverse inference could have been appropriately applied against the City on its motion for summary judgment. (Opp. at 26)  Complementing this point, a world renowned expert on public-private partnerships and public administration examined the parties' course of performance in this matter, Walton's conduct and that of others, and provided an expert opinion which not only affirmed the existence of a public-private partnership between the parties, but that there was evidence the City created and implemented policies and customs to favor some developers and favored persons/entities, and harm others through the use of not-for-profit groups, delay tactics, and restrictions on speech, including the Plaintiffs. (Ex. 130)

Exhibits 103-105 all relate to Hinterberger's ultimate loss of the Uptown Business Center property, and environmental issues that Plaintiffs have stated were suddenly raised by the City (through Walton and DMD) as Plaintiffs worked to obtain financing so as to hold onto the Uptown Business Center.  The Court raised concerns about Exhibit 103, photos of the truck at the location at issue.  The attorneys now recognize that exhibit was not dated or adequately documented, and apologize for that oversight.  Exhibit 105 is the affidavit of Michael Mergell, a witness on Hinterberger's Final Witness and Exhibit Lists (Docket No. 109 at 9), who is a financial investor who had familiarity with the Uptown Business Center site

itself and the accompanying underwriting and financing issues. (Ex. 105, ¶¶ 2-3)  Mergell's affidavit reflected that environmental issues arose, and that those were factors impacting financing efforts and causing delay. (*Id.*, ¶ 4 (reference to "*now* environmental issues")) (emphasis supplied). (Exhibit 104 is addressed below in Section I.A.7)   The attorneys attempted in good faith to present facts, including the adverse inferences imputed to the City from Walton's assertion of his Fifth Amendment privilege, that those "environmental issues" were at least triggered by the appearance of the trucks that were initiated from Walton and DMD, consistent with the polices and customs engaged in by the City through DMD to delay and/or hinder disfavored developers and projects.

### 6.    *The Condition That Hinterberger Not Speak Negatively*

The Court raises questions regarding the citations to the conditions imposed upon Hinterberger by City officials.  The Court expressed concern over the use of the term "gag order."  The Court also raised concern that the only evidence of an agreement is in Exhibits 49 and 126, and that inclusion of those documents (which reflect the same memo) exhibited an effort to falsely support assertions of fact. (Order at 12)   The attorneys respectfully dispute that there was any bad faith in presenting this evidence as a disputed fact.

Counsel used the term "gag order" consistent with its dictionary definition – a "nonjudicial prohibition against the release of confidential information or against public discussion of a sensitive matter."   "Gag Order," Merriam-Webster Online Dictionary, http://www.merriam-webster.com (April 13, 2019).   Put differently, it was utilized to describe the condition of performance placed and enforced upon Hinterberger by Deputy Mayor Michael Huber.  Counsel considered it to be a reasonable and accurate short-hand

term reflecting the totality of facts and their significance that the Plaintiffs were attempting to describe for the Court.

The Court raised concerns as to the existence of an agreement regarding this restriction on Hinterberger and reference to it in a document attached as an exhibit. (Order at 12)  That document described restrictions placed upon Hinterberger as part of an "agreement" with the City, namely that he would not "bash" the Mayor in the press, and that he was required to work through a neighborhood not-for-profit group (*i.e.,* Harmoni) (Ex. 49), with which, if he complied, would lead to the promised financing for Hinterberger's project.  While the cited e-mail is objective evidence from then Deputy Mayor Huber that an agreement was in place, the Plaintiffs offered additional evidence from Hinterberger's and Huber's testimony to show that the agreement, which included the restriction on Hinterberger's speech, existed *prior* to his drafting of the e-mail in question. (Ex. 1 at 194:12-195:3; Ex. 9 at 271:23-272:4)  Cagann, who had personal knowledge of the agreement, provided a sworn interrogatory answer as to Huber's involvement and the directive to Hinterberger that he must work through a not-for profit group. (Ex. 16, Answer to Interrogatory No. 4)  While the Court appears to have determined that no agreement existed regarding these conditions, the attorneys set forth these facts in good faith as evidence of such an agreement because it is central to the Plaintiffs' claims against the City.

The Court is also critical of designating this email twice. (Order at 12)  The reason that both documents were included and cited is simply an error, which when discovered in working towards completing the final draft and assembly of exhibits, the attorneys became concerned, given the timing, that removal of the duplicate might cause misnumberings and misidentification of exhibits in the opposition.  To avoid that confusion, the duplicative

15

document was kept in but reference was made to it under the belief that it was less confusing. It appears that was not the preferred approach and for that the attorneys apologize.

       7.    *Redactions*

As the Court observed, there were certain submissions that were blank pages, one of which the Court notes as Exhibit 104. The attorneys understood from their client that that document had confidential information, but unfortunately misread Local Rule 5-11(c)(2) and submitted the redacted sheets. They now recognize that was erroneous and regret their error. Counsel provided unredacted copies of this document to the Court and opposing counsel contemporaneously, with the assumption that the Court would have available and review the unredacted versions. Consistent with the efforts to address confidentiality designations, Plaintiffs further submitted certain documents (documents that were not designated as such by Plaintiffs) under seal as required by Local Rule 5-11. (*See* Docket No. 145, Plaintiffs' Motion to File Documents Under Seal) Plaintiffs' counsel undertook these efforts in good faith to respect all confidentiality designations made by any and all parties in the case.

**B.    Questions About Narrative Statement of Facts**

 The Court raised questions about the absence of numbered paragraphs to delineate the statement of facts. The attorneys acknowledge the Court's concern, and recognize that numbering the paragraphs may have been the better course. However, the attorneys took steps to determine the local rules' requirements as to format and content. After reading the local rule, and following discussions with local attorneys on the case, it was understood that numbered paragraphs were not required. *See* Rachlis Declaration, ¶ 6; *Pike v. Caldera,* 188 F.R.D. 519 (S.D. Ind. 1999) (relying on Local Rule 56-1 that has since been amended).

The local rule states that the non-moving party must show "potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment," but does not require presenting numbered paragraphs.  *See* Local Rule 56-1 & Advisory Committee Comments.   The discussion on pages 2-22 of the Summary Judgment Opposition represents precisely that effort.

The Opposition's disputed issues of fact is divided into nine sections, which were structured to demonstrate narratively the disputed issues.  Section A (on pages 2-5) attempts to outline facts regarding detrimental reliance and promissory estoppel that address many of the statements of fact made by the Defendant (including ¶¶ 2, 6, 12-15, 17-18).  Sections B, C, D, and F set forth facts regarding conditions and restrictions placed upon Hinterberger, which disputed Defendant's statements regarding applicable terms and conditions (including ¶¶ 12-15, 17-19). Section E addressed facts associated with the Equal Protection claim upon which the City moved for summary judgment.  Sections G and H set forth facts regarding property and liberty interests held by Plaintiffs, which were challenged by the City (*see* City Mem. at 12-19).  Section I sets forth disputed facts regarding the existing policies and customs on the Plaintiffs' *Monell* claim upon which the City also moved for summary judgment.

The cases cited in the Order (at 5-8 and 14-15) for the proposition that the facts section was non-compliant and sanctionable are distinguishable from what Plaintiffs presented here.   In *Waldridge v. American Hoechst Corp.,* 24 F.3d 918 (7th Cir. 1994), the plaintiff failed to include a fact section and instead, included a statement of issues that failed to specify which facts were in dispute and provide record cites to facts.   *Id.* at 921-23.   Similarly, in *Modrowski v. Pigatto*, 712 F.3d 1166 (7th Cir. 2013), the plaintiff offered no facts

section and instead relied on an argument that the movant did not meet his burden with respect to factual evidence. *Id.* at 1168-69.  In several cases cited in the Order, the court struck a fact section as non-compliant where it failed to strictly comply with the Northern District of Illinois rule regarding responding specifically to each numbered paragraph with a separate numbered paragraph. *See Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524 (7th Cir. 2000); *Ammons v. Aramark Uniform Services, Inc.,* 368 F.3d 809, 817-18 (7th Cir. 2004); *Smith v. Lantz*, 321 F.3d 680, 683 (7th Cir. 2003); *Greer v. Board of Educ. Of City of Chicago, Ill.,* 267 F.3d 723, 727 (7th Cir. 2001); *Cichon v. Exelon Generation Co., LLC,* 401 F.3d 803, 809-10 (7th Cir. 2005).

The structure, the headings, and the recitation and discussion of facts presented here were intended to specifically line up against, and controvert, the City's statement of facts. The attorneys recognize that the Court did not find this effort effective or helpful but it was done in this manner in a good faith belief that it complied with the local rules.

## II.      Even if a Violation of Local Rule 56-1 Is Found, No Sanction Is Warranted

The attorneys submit that no sanction is appropriate or necessary.  The Court's opinion is humbling and humiliating.  Nothing more is necessary.  However, if the Court believes further examination is warranted into whether, and if so what, sanctions may be appropriate, the Advisory Committee notes to Rule 11(c) suggests the following be considered:

(1) whether the improper conduct was willful or negligent – here, as discussed above, it was honestly and unintentionally mistaken at worst;

(2) whether it was part of a pattern of activity or an isolated event – here, the issue is isolated;

18

(3) whether it infected the entire pleading, or only one particular count or defense – here, the Court's order directed counsel to address the conduct in the Standard of Decision section of the Order, which focused on the statement of facts in the Opposition to summary judgment;

(4) whether the person has engaged in similar conduct in other litigation – here, there is no such conduct;

(5) whether it was intended to injure – here, there was no intent to injure;

(6) what effect it had on the litigation process in either time or expense – here, the brief and exhibits were presented in opposition to a 37 page summary judgment submission;

(7) whether the responsible person is trained in law – here, the attorneys are trained at law;

(8) what amount given the financial resources of the responsible person is needed to deter that person from repetition in the same case – here, the attorneys have not received any compensation in this matter for the substantial effort they undertook to represent the Plaintiffs' in this case, including to prepare the Opposition;

(9) what amount is needed to deter similar activity by other litigants – here, the undersigned suggest no amount or further action is necessary or warranted, as the concerns that are identified in the Court's Order are more than enough to accomplish a goal of deterrence.

For these reasons and those identified more specifically above, the matter at bar is different than certain of the cases cited in the Order where the facts sections at issue were misstatements of the record or conclusory at best. *See De v. City of Chicago,* 912 F. Supp. 2d 709, 712 (N.D. Ill. 2012); *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (cited in the

Order at 15).   Under these circumstances, for similarly situated counsel, the attorneys suggest that sanctions are not warranted.

## CONCLUSION

All undersigned attorneys repeat their apologies to the Court for the issues and concerns raised.  As explained above, the actions were not taken in bad faith, and even if a lower standard were applicable, the conduct at issue does not rise to the level of sanctions. The undersigned attorneys respectfully request that no sanction be imposed on any of the attorneys in this matter.


Dated: April 15, 2019

Respectfully submitted,

 /s/ Michael Rachlis                                          /s/ Mary Jane Lapointe
Michael Rachlis                                             Mary Jane Lapointe


 /s/ Kevin B. Duff                                            /s/ Daniel L. Kent
Kevin B. Duff                                                Daniel L. Kent


 /s/ Nicole Mirjanich
Nicole Mirjanich

RACHLIS DUFF PEEL & KAPLAN, LLC            LAPOINTE LAW FIRM, P.C.
542 South Dearborn St., Suite 900                 8465 Keystone Crossing, Suite 150
Chicago, Illinois 60605                                    Indianapolis, IN  46240
(312) 733-3950                                              (317) 829-5870
(312) 733-3952 (fax)                                       (312) 829-5871 (fax)

## CERTIFICATE OF SERVICE

I certify that on April 15, 2019, I electronically filed the foregoing **Response and Opposition to Rule to Show Cause** with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all ECF-registered counsel of record.

 /s/ Michael Rachlis
Michael Rachlis
RACHLIS DUFF PEEL & KAPLAN, LLC
542 South Dearborn, Suite 900
Chicago, Illinois 60605
(312) 733-3950
(312) 733-3952 (fax)